Robinson *v.* Wiley.

[MONROE GENERAL TERM, December 4, 1854. *Johnson, Welles* and *T. R. Strong,* Justices.]

---

## ROBINSON *vs.* WILEY.

The exemption of real estate from sale upon execution, created by filing a notice under the "Homestead Exemption" act, is not an *incumbrance, claim,* or *lien* on the premises.

Accordingly, where a party, on applying for credit, represented, in substance, that there was no incumbrance, claim, or lien on his property, except a mortgage of from $300 to $400, although he had in fact previously filed a notice in the clerk's office claiming to hold the premises as a homestead, under the act of April 10, 1850, exempting homesteads from sale under execution, *Held* that he was not thereby *estopped* from insisting upon the exemption of the premises from sale under a judgment recovered for the debt contracted upon the faith of such representations.

APPEAL by the defendant from a judgment entered upon the report of a referee. The following facts were found by the referee: That on the 2d day of January, 1854, Oren Sage and Edwin Pancost recovered a judgment against the defendant, which was duly docketed on that day in the clerk's office of Monroe county, for $337.29 damages and costs, and that a transcript of the docket was filed in the clerk's office of the county of Genesee on the 3d day of the same month of January; that the same parties recovered another judgment in this court against the defendant, on the 10th day of February, 1854, for $332.21 damages and costs, which, on the same day, was duly docketed in the clerk's office of the said county of Genesee; that the consideration of both of these judgments was for goods sold and delivered by the plaintiffs therein named to the defendant, upon

Robinson *v.* Wiley.

the faith of the representation made to them, in substance, by the defendant, that he was worth from $2500 to $3000 over and above his debts, and that a certain lot, with a house and shop thereon, owned by him, and situated in the village of Pembroke, in the said county of Genesee, was unincumbered except by a mortgage, upon which was to become due and payable thereafter, in annual installments, the sum of $300 or $400, and that there was no other claim or incumbrance thereon ; that this representation was false, and known to be so by the defendant at the time it was made ; that he was then wholly insolvent, and that he had previously filed papers in the clerk's office of the said county of Genesee,(*a*) sufficient in form to exempt $1000 in value of the said premises from sale or liability upon execution against him, under the act entitled " An act to exempt from sale on execution the homestead of a householder having a family," passed April 10, 1850,(*b*) which fact at the times when the said goods were so sold and delivered to the defendant was unknown to the said Oren Sage and Edwin Pancost, who resided and were

(*a*) The following is the notice which was filed : " By these presents, notice is given that Julius Wiley and Adelaide Wiley, of the town of Pembroke, in the county of Genesee and state of New York, householders, and having a family, and being the owners of the premises hereinafter described, and occupying the same as a residence, design and intend to hold said premises as exempt from levy and sale under execution, under and by virtue of the act of the legislature of the state of New York, entitled " An act to exempt from levy and sale under execution the homestead of a householder having a family," passed the 10th day of April, 1850 ; and that in respect to said premises, we intend to and shall avail ourselves of all the benefits, advantages and provisions secured or provided by said act. (Here follows a description of the premises.) In witness whereof," &c. (Signed by the parties.)

(*b*) Laws of 1850, p. 499. The first section of the act declares that, in addition to the property previously exempt by law from sale under execution, there shall be exempt from such sale for debts hereafter contracted, the lot and buildings thereon, occupied as a residence, and owned by the debtor, being a householder, and having a family, to the value of $1000. The second section provides that, to entitle any property to such exemption, a notice that the same is designed to be held as a homestead under the act, shall be executed and acknowledged by the owner, which shall contain a full description thereof, and shall be recorded in the office of the clerk of the county; in a book to be provided for that purpose, and known as the " Homestead Exemption Book."

Robinson *v.* Wiley.

doing business in the city of Rochester ; that the said judgments were duly and absolutely assigned to the plaintiff by the said Sage and Pancost before the commencement of this action, together with all claims and rights of action growing out of the sale of the said goods, and the said representations, or incident to the said judgments. Upon these facts the referee found, as matter of law, that the plaintiff was entitled to a judgment in this action, that the said judgments in favor of Sage and Pancost, and each of them, were entitled to a priority over the claim, lien or incumbrance created by the filing of the papers to exempt the said premises from sale upon execution under the act aforesaid ; and that such claim, lien or incumbrance ought to be postponed to the lien created by the docketing and the filing of the transcript of the docket of the first mentioned judgment, and by the docketing of the judgment secondly mentioned ; and he ordered judgment accordingly, with costs.

*Angle & Trimmer*, for the appellant.

*E. A. Hopkins*, for the respondents.

*By the Court*, T. R. STRONG, J. Assuming that the goods, for the price of which the notes, upon which the judgments were recovered, were given, were sold upon the faith of a false and fraudulent representation by the defendant, that he was worth $2500 to $3000, over and above his debts, it forms no sufficient ground for giving the judgments priority, in respect to the real estate mentioned in the complaint, to the exemption thereof from sale on execution, which had been secured under chapter 260 of the laws of 1850, and was in force at the time of the sale. If fraud, in regard to the defendant's pecuniary ability generally in contracting the debt, would entitle the creditors to such a preference, I do not perceive why they would not be equally entitled to, and why the plaintiff might not have claimed, in this action, a preference over the exemptions allowed by the revised statutes, and chapter 157 of the laws of 1842, as to personal property. It was at least necessary, to a sufficient

basis for the priority claimed, that it should appear the defendant, at the sale, willfully misrepresented as to the existence at that time of the exemption of the real estate from execution, and that the sellers were thereby misled. He must have procured the sale of the goods, by inducing the sellers to believe that the premises were not protected from seizure and·sale by execution, so that it would be inequitable, and operate as a fraud upon them, if he should be allowed to set up this exemption. The principle which must be invoked in this case is that of an estoppel *in pais ;* and unless a case is made in regard to the land, to which that principle is applicable, the plaintiff cannot recover.

It is alleged in the complaint that the defendant represented at the sale, among other things, that the real estate was incumbered by mortgage only to the extent of about $300 or $400, and that no other claims or liens upon it existed; that this representation was false, and known by the defendant to be so, and was made with intent to deceive the sellers of the goods, and that the sale was made by the sellers on the faith of the representations. The falsity of this representation is alleged to consist in the fact, that the defendant had previously, in pursuance of the act of 1850, secured the exemption of the premises from execution. The evidence at the trial fully sustains the allegations in the complaint as to the representations and the reliance upon them by the sellers, and shows that the defendant has a wife and minor children, and resides on the premises. It also proves that a notice, signed by the defendant and his wife, such as is specified in the second section of the act of 1850 aforesaid, was filed and recorded as therein required. And the referee has found substantially the same facts, but he has not found, nor is it proved, except as it may be inferred from the facts above stated, that the defendant misrepresented as aforesaid in regard to the real estate with intent to deceive the sellers of the goods.

Is the defendant, within the doctrine of estoppels *in pais,* precluded by his conduct from insisting upon the exemption of the premises from execution, as to the judgments. His representation was, in substance, that there was no incumbrance,

Robinson *v.* Wiley.

claim or lien on the premises, except a mortgage of from $300 to $400. It is not alleged that there was any other, beyond the statute exemption. Was this an incumbrance, claim or lien? It is impossible, I think, to maintain that it was. The defendant was none the less, because of that exemption, the owner of the entire estate in the premises. His power of disposition thereof, subject to the mortgage, was not thereby in any degree impaired. The statute merely protected him in the enjoyment of the same as against the executions of his creditors. No right to or interest in them, as against his rights, was acquired by any other person. An incumbrance on land is a charge or burden upon it in favor of some other person than the owner. A claim *upon* land, or a lien thereon, within the meaning of those terms in the representation, is nothing short of an incumbrance. It is an interest or right of one person attaching to an estate belonging to another.

It is insisted, on the part of the plaintiff, that if this exemption was not strictly and literally an incumbrance, it was so substantially; that it will have the effect of an incumbrance as to the judgments, if the defendant shall be permitted to avail himself of it; and that the substance of the representations as to the real estate was, and that the defendant designed by it to convey the idea, that the premises could be relied on by the sellers as a means of enforcing payment of their debt. Fraud by the defendant—an intention by him to deceive the sellers by this representation—is an essential element of this position. If the representation is susceptible of two constructions, one of which is consistent with the truth, and the other not, the latter should not be adopted in support of the plaintiff's claim to an estoppel, unless it appears there was a fraudulent motive. The representation, in that sense, must have been intentionally false, and designed to mislead. Fraud is not to be presumed; it must be proved. The evidence in the case will not warrant the conclusion that the defendant intended to misrepresent and mislead, by this representation. The conversation between the defendant and the sellers was in regard to *his* pecuniary ability; not to the state of his property in respect to *their* ability to enforce

payment by legal proceedings. It was in relation to the former subject that the representation was made. As to that subject, it was both literally and substantially, in its letter and spirit, correct.

As these views, if sound, are decisive of the case, it is not necessary to consider any of the other questions raised.

The judgment appealed from must be reversed, with costs.

[Monroe General Term, December 4, 1854. *Johnson, Welles* and *T. R. Strong*, Justices.]